[Crim. No. 5957. Fifth Dist. Mar. 15, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR BALDERAS DIAZ, Defendant and Appellant.

## COUNSEL

Deborah A. Vollmer, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones, Eddie T. Keller and Edmund D. McMurray, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MARTIN, J.**—This is an appeal from a conviction for voluntary manslaughter (Pen. Code, § 192).

### THE FACTS

Sometime between October and November 1979, Pablo and Ruth Aguirre rented a house to the decedent, Adolfo Landa. The rent for the premises was to be due on the 10th day of each month. At the time the rental agreement was made, Landa was accompanied by appellant. Although Landa paid the rent, the Aguirres knew that appellant also resided on the premises.

Guadalupe Ornelas, a neighbor of appellant and Landa, would see them come and go in an automobile. She also observed visits from other Mexican males who appeared to be anywhere from 30 to 40 years old.

On March 6 or 7, 1980, Mrs. Aguirre found a note on her door. The note had Landa's name on it and stated that he had departed to Los Angeles because of an emergency, but would return to pay the rent. The March rent was never paid.

Sometime after March 10, Pablo Aguirre had a conversation with appellant. Appellant informed Aguirre that Landa had gone to San Bernardino. Appellant conceded that he had left the earlier note on Aguirre's door.

Landa had, in fact, taken a trip to an irrigation canal about 12 to 15 miles from his residence. His body was recovered from the canal on the morning of March 9, 1980.

An autopsy was performed on March 10. Landa had sustained injuries to his head, neck, chest and arm. Landa had been shot in the chest with a .22 caliber bullet. He also had six inches of a large metal file embedded in his body. The cause of death was judged to be the gunshot wound and multiple traumatic injuries.

On January 19, 1981, appellant was arrested on an outstanding traffic citation. On January 20, appellant was interviewed. Deputy Sheriff Salas conducted the interrogation in Spanish. Appellant first denied knowing Landa, but quickly conceded that he knew why he was being questioned. Appellant stated that Landa was a homosexual and had made sexual advances toward him. Upon being spurned, Landa charged appellant with a knife. Appellant was able to stun Landa by hitting him in the head with a Coke bottle. Nevertheless, Landa again charged, this time with a metal file. In the ensuing struggle, Landa was stabbed in the neck. Somehow, a smaller file also became embedded in Landa's arm.

Believing Landa to be dead, appellant left the house in order to wash the blood from the bed sheets. When he returned, he found that Landa's body had moved from the bed to the floor. The next morning, appellant drove the body to a canal and dumped it.

Appellant presented no evidence. In closing argument, defense counsel urged that there was insufficient evidence to establish that appellant had delivered the fatal blow. In particular, there was no evidence that appellant had shot Landa. Pointing to the evidence that other men occasionally visited the house, counsel offered the hypothesis that someone had come in and finished off Landa during the time appellant was washing his bed sheets.

I

█ █ █ Prior to trial, a hearing was held on the issue of whether appellant's admission[1] should be suppressed pursuant to the principles enunciated

---

[1]Appellant's statement constitutes an admission rather than a confession, since it contained facts amounting to a claim of self-defense. (*People* v. *Maynarich* (1978) 83 Cal.App.3d 476, 481 [147 Cal.Rptr. 823].)

in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Deputy Sheriff Salas, who had interrogated appellant, testified at the hearing. Salas explained that he had spoken Spanish his entire life and, for that reason, had been enlisted by Sergeants Suorez and Davis to question appellant.

At the beginning of the interrogation, appellant was read his *Miranda* rights in Spanish. Those rights were contained on a card entitled, "Department of California Highway Patrol Miranda Warning."[2]

After reading the *Miranda* warnings, Salas asked appellant if he understood his rights. Appellant responded in the affirmative and Salas asked appellant, "if he wanted to talk to us, answer questions that investigators would ask." Again, appellant responded in the affirmative.[3] Thereafter, appellant was interrogated for an hour and made the statements which were later admitted into evidence at trial. These statements were not tape recorded.

Subsequent to the hour-long interrogation, appellant was moved to a different room for the purpose of taking a tape-recorded statement. A statement was then taken. The tape recording was played at the hearing before the trial court, and Salas was questioned as to his translation of the tape.

---

[2]The card provided:

"MIRANDA WARNING
"AVISO DE MIRANDA
"1. Usted tiene el derecho de quedar callado.
"2. Cualquiera cosa que diga se puede usar contra usted en una corte de ley.
"3. Usted tiene el derecho de hablar con un abogado y de tenerlo presente mientras les hacen preguntas.
"4. Si no puede conseguir un abogado, se le puede nombrar uno antes de que le hagan preguntas.
"OBTAINING WAIVER
"1. Comprende usted cada uno de los derechos que se le han explicado?
"2. Teniendo estos derechos presente, desea hablar con nosotros ahora?"

[3]The Highway Patrol card, in addition to the advisements required by *Miranda*, contained two interrogatories under the heading "Obtaining Waiver." These two interrogatories (the last two sentences contained in footnote 2) asked, "Do you understand each of these rights I have explained to you?" and "Having these rights in mind, do you wish to talk to us now?"

At the hearing, Salas testified that he had read the first interrogatory to appellant, but could not recall if he had read the second one. Appellant contends that the failure to read this "essential question" (if such failure occurred) is evidence that appellant could not have made an effective waiver of his rights. This contention is meritless.

*Miranda* does not require that any specific language be used in obtaining a waiver. (See *Miranda, supra*, 384 U.S. at pp. 478-479 [16 L.Ed.2d at pp. 725-727].) Moreover, in this case, Salas testified that appellant agreed to answer questions immediately after stating that he understood his rights. Thus, even if Salas did not read the second interrogatory, there could not have been any harm to appellant, since he already had been apprised of his rights and acknowledged that he understood them.

The tape commenced with Salas' reading of the Highway Patrol's Spanish *Miranda* card.[4] Salas then asked appellant if he understood his rights. Appellant responded, "no." According to Salas' translation, appellant modified his negative response by stating, "the only thing I have to tell you is the same thing I already told you before . . . then if you want to get me an attorney . . . ."[5] Salas testified that appellant's use of "no" was not intended to be interpreted in a negative sense.

Rudy Ventura, a court-certified interpreter, also attempted to interpret the tape. His translation of appellant's response was similar to that of Salas. According to Ventura, appellant stated, "no. I can tell you the same. Then if you want to get, get me a lawyer."[6] Based on this translation, Ventura could not tell if appellant understood his *Miranda* rights.

Lopez Sierra, another court-certified interpreter, also testified. He agreed with the other witnesses that appellant began his statement with "no." As to the rest of the statement, Sierra was simply guessing as to what was said. Sierra, like Ventura, could not tell whether or not appellant had understood his rights.

Based on this testimony, the trial court excluded the tape-recorded statement because "there is a total and complete ambiguity as to the defendant's remark in the tape and the court is not going to find that there was a waiver." However, the court held that appellant's earlier unrecorded statement would be admitted into evidence.

On appeal, appellant raises two separate contentions as to why his first statement should have been excluded. He first urges that the Spanish *Miranda* warnings were defective, since the word "conseguir" did not convey the information that he could receive an appointed attorney if he was indigent. Secondly, appellant contends the record does not reflect a knowing and intelligent waiver of his *Miranda* rights. We will address these issues in reverse order.

## A

■ Appellant contends that he did not make a knowing and intelligent waiver of his rights. At trial, "a heavy burden rests on the government to

---

[4]According to the testimony of Lopez Sierra, a court-certified interpreter, one of the advisements given by Salas was that "[a]nything you say can be used against the law." Appellant uses this evidence to question Salas' comprehension of Spanish.

[5]It must be noted that Salas pieced his translation together during the course of several in-court playings of the tape.

[6]Appellant contends that this comment may be interpreted as a request to speak to an attorney. If so, the interrogation should have ceased at that point and any subsequent statement would be inadmissible. (*Miranda, supra,* 384 U.S. 436, 474 [16 L.Ed.2d 694, 723].) However, the record does not support this contention. Lopez Sierra testified that appellant's comment did not constitute a request to have an attorney present. At best, the comment could only be interpreted to be a request to speak to counsel after the interrogation. Thus, appellant's contention has little merit.

demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. [Citation.]" (*Miranda, supra,* 384 U.S. at p. 475 [16 L.Ed.2d at p. 724].)

"On appeal, the question of the voluntariness of a confession is based upon a review of the totality of circumstances surrounding the statements. (*Fare* v. *Michael C., supra,* 442 U.S. 707, 724-725 [61 L.Ed.2d 197, 212, 99 S.Ct. 2560, 2571-2572]; *People* v. *Sanchez* (1969) 70 Cal.2d 562, 576 [75 Cal.Rptr. 642, 451 P.2d 74], cert. dism. (1969) 394 U.S. 1025 [23 L.Ed.2d 743, 89 S.Ct. 1646]; *In re Cameron* (1968) 68 Cal.2d 487, 498 [67 Cal.Rptr. 529, 439 P.2d 633].) The record must contain evidence from which the trial judge could have found beyond a reasonable doubt that the statement at issue was the product of a knowing and intelligent waiver of defendant's *Miranda* rights. (*People* v. *Braeseke* (1979) 25 Cal.3d 691, 701 [159 Cal.Rptr. 684, 602 P.2d 384], judgment vacated cause remanded (1980) 446 U.S. 932 [64 L.Ed.2d 784, 100 S.Ct. 2147], reiterated (1980) 28 Cal.3d 86 [168 Cal.Rptr. 603, 618 P.2d 149], cert. den. (1981) 451 U.S. 1021 [69 L.Ed.2d 395, 101 S.Ct. 3015]; cf. *People* v. *Jimenez* (1978) 21 Cal.3d 595, 608 [147 Cal.Rptr. 172, 580 P.2d 672].) A reviewing court must examine the uncontradicted facts in the record to determine independently whether the trial court's finding of intelligent waiver was properly made. As to conflicting testimony, the reviewing court must accept that version of events which is most favorable to the People, to the extent that it is supported by the record. (*Id.,* at p. 609.)" (*People* v. *Prysock* (1982) 127 Cal.App.3d 972, 988-989 [180 Cal.Rptr. 15].)

■ Preliminarily, it should be noted that this court must independently assess whether appellant knowingly and intelligently waived his rights. This degree of appellate scrutiny is required, since the facts in the record are essentially uncontradicted. (*People* v. *Jimenez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672].) Once such an assessment is made, it is apparent that the trial court erred in admitting appellant's unrecorded admission.

As noted above, this court must examine the totality of the circumstances in determining whether appellant made a knowing and intelligent waiver of his rights. (*Fare* v. *Michael C.* (1979) 442 U.S. 707, 724-725 [61 L.Ed.2d 197, 212, 99 S.Ct. 2560].) ■ The totality of the evidence presented before the trial court reveals that appellant first made an unrecorded statement to the police. Deputy Sheriff Salas testified that appellant made a knowing and intelligent waiver of his rights before making this statement. However, approximately one hour later appellant did not subsequently understand his rights at the time the tape recorder was turned on.

Deputy Sheriff Salas and interpreters Sierra and Ventura all testified that appellant responded in the negative when he was asked if he understood his rights.

Appellant then modified his answer with the ambiguous comment that he could only repeat his earlier statement and that the police might then get him an attorney. Salas thought appellant thereby knowingly waived his rights, but Sierra and Ventura were not persuaded that such was the case.

In our view, the totality of the evidence does not establish a knowing and intelligent waiver on the part of appellant. Appellant's response, "No, the only thing I have to tell you is the same thing I already told you before . . . then if you want to get me an attorney . . . ," hardly reflects a comprehension of one's *Miranda* rights. In this regard, it is important to note that two apparently objective court interpreters could not find a knowing and intelligent waiver within appellant's statement.

If one concludes that an effective waiver was not made at the time the tape recorder was turned on, it is highly unlikely that a knowing and intelligent waiver could have been made prior to the earlier statement. A person does not understand his rights at 11 a.m. only to lose his comprehension by noon. Thus, in this case, where the only evidence of an effective waiver was the testimony of Deputy Sheriff Salas, it would appear that the trial court erred by admitting appellant's statement into evidence.

This conclusion is supported by *Miranda* itself. The government bears a "heavy burden" in establishing a knowing and intelligent waiver. (*Miranda, supra,* 384 U.S. 436, 475 [16 L.Ed.2d 694, 724].) The instant record simply does not reveal sufficient evidence to satisfy this burden. Moreover, it certainly cannot be said that there is proof beyond a reasonable doubt that appellant made a knowing and intelligent waiver. (*People* v. *Braeseke* (1979) 25 Cal.3d 691, 701 [159 Cal.Rptr. 684, 602 P.2d 384].)

Having concluded that the trial court erred in admitting appellant's unrecorded statement into evidence, the question remains whether reversible error has been shown. Since appellant's statement constituted an admission, the error must be deemed prejudicial "unless the People show beyond a reasonable doubt that the error complained of did not contribute to the verdict [citations]." (*People* v. *McClary* (1977) 20 Cal.3d 218, 230 [142 Cal.Rptr. 163, 571 P.2d 620].) Under this test, there can be no doubt the error was prejudicial. The appellant's statement was a major part of the People's case. The judgment must be reversed. (*Ibid.*)

### B

Appellant next urges that the Spanish *Miranda* warnings were defective, since the word "conseguir" did not convey the information that he could receive an appointed attorney if he was indigent. Assuming arguendo, that ap-

pellant may have made a knowing and intelligent waiver when first questioned by Deputy Salas, we will address this issue.

As is well settled, *Miranda* requires that an individual who is subjected to custodial interrogation must be first advised, among other things, that "if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." (*Miranda, supra,* 384 U.S. 436, 479 [16 L.Ed.2d 694, 726].) The purpose of this particular advisement is to "convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present." (*Id.,* at p. 473, fn. omitted [16 L.Ed.2d at p. 723].) In order to make clear to an indigent that this right is owing to him, there must be an "effective and express explanation" of the right. (*Ibid.*)

Here, appellant was informed, "[i]f you cannot *get* a lawyer, one can be named before they ask you questions." The People concede, as they must, that appellant was not explicitly informed of his right to appointed counsel if he could not "afford" to retain counsel. However, it is urged that the use of the word "conseguir" (meaning "to get" or "to acquire") conveyed to appellant that an attorney would be appointed for him if he was indigent. In the view of the People, "regardless of how the warning was worded, appellant was apprised of his right to have an attorney appointed to represent him before questioning commenced."

The People misinterpret the thrust of the required warning. As noted above, the *Miranda* court required this particular advisement in order to inform indigents that they had the right to the presence of appointed counsel during questioning. (*Miranda, supra,* 384 U.S. at p. 473 [16 L.Ed.2d at p. 723].) Because of the importance of this right, the Supreme Court required that an "effective and express explanation" be given. (*Ibid.*)

Deputy Sheriff Salas testified that he made a verbatim reading of the Spanish *Miranda* card and did not make any further explanation of the rights stated therein. Approximately one hour later, on tape, Salas again made a verbatim reading of the card. Based on this record, it cannot be said that appellant was given an "effective explanation" that his indigent status, if such was the case, entitled him to appointed counsel.

The People contend that recent Supreme Court authority requires us to reach a contrary conclusion. In *California* v. *Prysock* (1981) 453 U.S. 355 [69 L.Ed.2d 696, 101 S.Ct. 2806], a case arising out of this court, it was held that "*Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures." (*Prysock, supra,* 453 U.S. at p. 359 [69 L.Ed.2d at p. 701, 101 S.Ct. at p. 2809].) Rather, "a fully effective equivalent" would satisfy the requirements of each warning. (*Ibid.*)

The *Prysock* court then proceeded to apply this rule to the facts before it. The defendant had been advised that "you have the right to have a lawyer appointed to represent you at no cost to yourself." (*Id.*, 453 U.S. at p. 357 [69 L.Ed.2d at pp. 699-700, 101 S.Ct. at p. 2808].) This court held that the warning was defective because the defendant was not explicitly advised that appointed counsel could be present before questioning commenced. (*Id.*, 453 U.S. at p. 359 [69 L.Ed.2d at p. 701, 101 S.Ct. at p. 2809].) The Supreme Court reversed because the defendant had been earlier advised that he could have a lawyer present prior to and during interrogation. (*Id.*, 453 U.S. at p. 361 [69 L.Ed.2d at p. 702, 101 S.Ct. at p. 2810].) "These warnings conveyed to respondent his right to have a lawyer appointed if he could not afford one prior to and during interrogation. The Court of Appeal erred in holding that the warnings were inadequate simply because of the order in which they were given." (*Ibid.*, fn. omitted.)[7]

We conclude that respondent's reliance on *Prysock* in the instant case, on these facts, is misplaced. While it is true that "no talismanic incantation" is required, there still must be an "effective and express explanation" of the right. Here, no such explanation was given.[8] (*Miranda, supra,* 384 U.S. 436, 473 [16 L.Ed.2d 694, 723].)

The record reflects that Rudy Ventura and Lopez Sierra, two court-certified Spanish language interpreters, testified at the suppression hearing. They both testified that the Spanish language version used in this case does not state or advise that if a person cannot *afford* a lawyer one will be appointed for him.[9]

To quote an oft-used phrase, the facts of this case are a far cry from those of *Prysock*. There, the Supreme Court held, in effect, that the sum total of the warnings given to the defendant was sufficient to apprise him of all of his

---

[7]On remand from the Supreme Court, this court declined to adopt independent state grounds and followed the reasoning of the higher court. (*People* v. *Prysock, supra,* 127 Cal.App.3d 972, 981-988.)

[8]If the phrase "sin pagar" (meaning "without pay" or "without paying") had been used in the advisement in question, appellant would certainly have been adequately advised that indigent status would entitle him to appointed counsel. In so stating, we recognize that frequently there is no single word in a foreign language which carries the identical meaning of a particular word in the English language. In this regard, we examined four different Spanish translations (including the California Highway Patrol card used in this case) of the *Miranda* advisement at issue. We discovered that none of the translations were identical. However, unlike the California Highway Patrol's translation, those translations which used the word "conseguir" also contained additional qualifying phrases such as "sin pagar."

[9]Deputy Sheriff Salas was never asked to translate into English the Spanish language version of the *Miranda* rights found on the California Highway Patrol card. There may have been a good reason for this apparent oversight. Many Mexican-American residents in our country, often born, raised, and educated in the United States, speak and understand the spoken Spanish language fluently, but are far from fluent in reading or writing Spanish.

rights. In sharp contrast, the instant defendant was never advised that he had the right to appointed counsel if he could not *afford* one.

Our conclusion does not rely on a lack of "talismanic incantation." Rather, we hold that appellant did not receive an "effective and express explanation" of an indigent's right to appointed counsel. (*Miranda, supra,* 384 U.S. 436, 473 [16 L.Ed.2d 694, 723].) As the *Prysock* court noted, the warnings set forth in *Miranda* must be given "*in the absence of a fully effective equivalent . . . .*" (*Prysock, supra,* 453 U.S. at p. 360 [69 L.Ed.2d at p. 701, 101 S.Ct. at p. 2809].) Here, the alternative formulation of the warning was simply insufficient.[10]

## II

■ Appellant made a timely motion to set aside the information pursuant to Penal Code section 995. The motion was premised on two grounds: (1) the People had not established that Adolfo Landa was killed, since the body found in the canal was never identified at the preliminary hearing, and (2) there was no evidence presented that appellant had caused Landa's death, since Landa had died from a gunshot and there was no proof that appellant had shot him. Appellant now contends it was error for the trial court to deny the motion to set aside the information.

We decline to entertain this contention. First, appellant has failed to include the preliminary hearing transcript as part of the record on appeal. This alone precludes appellate review. (*People* v. *Siegenthaler* (1972) 7 Cal.3d 465, 469 [103 Cal.Rptr. 243, 499 P.2d 499]; *People* v. *Gard* (1978) 76 Cal.App.3d 998, 1004-1005 [143 Cal.Rptr. 346].) Appellant has also failed to provide authorities in support of his contention. This omission also results in a waiver of the right to appellate review. (*People* v. *Ham* (1970) 7 Cal.App.3d 768, 783 [86 Cal.Rptr. 906], overruled on another point in *People* v. *Compton* (1971) 6 Cal.3d 55 [98 Cal.Rptr. 217, 490 P.2d 537].)

## III

■ Prior to trial, appellant objected to the admissibility of three photographs of the victim's body. The first of these photographs depicted the vic-

[10]At oral argument, the People relied on *United States* v. *Anderson* (2d Cir. 1968) 394 F.2d 743. We find *Anderson* to be distinguishable from this case. There, an English speaking defendant was not specifically apprised that if he could not *afford* a lawyer, one would be appointed for him. Nonetheless, it was held that the advisement "fully complied with the *Miranda* standards." (*Id.,* at p. 746.) Here, we are faced with the adequacy of a warning given to a Spanish speaking defendant who was more than likely ignorant as to his rights under American law. Under these circumstances, the warning given to appellant was not the "fully effective equivalent" required by the United States Supreme Court.

tim's body where it was found. The People offered this photograph in order to establish appellant's consciousness of guilt in that he disposed of the body by placing it in the canal. A second photograph depicted the victim's body on the autopsy table. The People contended that this photograph was relevant to establish the existence of the gunshot wound in the victim's chest. A third photograph depicted the body and head area of the victim. This photograph was offered to establish the traumatic injuries to the victim's head.

Appellant moved to have the photographs excluded from evidence on the theory that their prejudicial effect outweighed their probative value.[11] The trial court refused to exclude the photographs, holding that they were "not as inflammatory as the court was led to believe."

As is well settled, Evidence Code section 352 vests the trial court with broad discretion in weighing the prejudicial effect of proffered photographs against their probative value. (*People* v. *Jackson* (1980) 28 Cal.3d 264, 302 [168 Cal.Rptr. 603, 618 P.2d 149], cert. den. 450 U.S. 1035 [68 L.Ed.2d 232, 101 S.Ct. 1750].) The trial court's decision to admit photographs of victims will not be disturbed absent a clear abuse of discretion. (*People* v. *Haskett* (1982) 30 Cal.3d 841, 859 [180 Cal.Rptr. 640, 640 P.2d 776].)

As this court has observed, the question on appellate review is "whether the photos have probative value and are offered and admitted for that purpose, or whether their primary purpose is to inflame the jury against the defendant." (*People* v. *Seastone* (1969) 3 Cal.App.3d 60, 65 [82 Cal.Rptr. 907].) Here, the People offered the photographs in order to establish the locale where the victim's body was found and to illustrate the nature of the victim's wounds.

Our Supreme Court tells us that the photographs were of probative value when offered for these purposes. "The color photographs in the instant case aided the jury in reconstructing the physical surroundings of the crime as well as the manner in which the victim's wounds were inflicted." (*People* v. *Hathcock* (1973) 8 Cal.3d 599, 621 [105 Cal.Rptr. 540, 504 P.2d 476].) In language which applies equally to the case at bar, the Supreme Court concluded, "[d]efendant makes no specific showing that the pictures were so duplicative or so inflammatory that the court's admission constituted an abuse of its discretion. [Citation.]" (*Ibid.*)

In short, there does not appear to be any reason for this court to substitute its discretion for that of the trial court. The People offered reasonable grounds for

---

[11]Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

the admission into evidence of the photographs, and the trial court believed those grounds outweighed any prejudicial effect there might be on the jury. We agree. There was no abuse of discretion in admitting the photographs.

## IV

Subsequent to his conviction, appellant moved for a new trial on the theory there was insufficient evidence establishing his guilt. Appellant contends the trial court erred in denying his motion. This contention is meritless.

■ "In ruling on a motion for a new trial based on the assertion that the verdict is contrary to the law or evidence, the trial judge must independently reweigh the evidence. The trial judge's determination will not be overturned absent a clear abuse of discretion. [Citations.]" (*People* v. *McClellan* (1980) 107 Cal.App.3d 297, 301 [165 Cal.Rptr. 603].) Thus, if there is substantial evidence in support of the trial court's ruling on the motion, the appellate court must affirm the judgment. (*People* v. *Longwith* (1981) 125 Cal.App.3d 400, 414 [178 Cal.Rptr. 136].)

In determining whether there is substantial evidence in support of a criminal conviction, this court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value —such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) When such a review is made in this case, there can be no doubt substantial evidence supports the judgment.

■ Appellant urges that the evidence is insufficient, since there was no proof that he inflicted the fatal wounds on the victim. While conceding that he stabbed Landa in the neck and arm, appellant never admitted shooting Landa or sticking the metal file deep into his body. Appellant concludes that another individual could have inflicted the fatal blows while he was away from the house washing the bed sheets.

Contrary to appellant's position, his admission that he stabbed Landa, was more than adequate to seal the jury's verdict. *People* v. *Olea* (1971) 15 Cal.App.3d 508 [93 Cal.Rptr. 265] establishes this point. There, the defendant and the victim were seen quarreling in a bar. They left the bar separately. Several hours later, the victim's body was found in the defendant's car, which was parked inside the defendant's yard behind a locked gate. The court rejected the hypothesis that some unidentified individual might have committed the homicide and affirmed the judgment. (*Id.,* at p. 513.)

Similarly here, the jury was free to reject the contention that a hypothetical stranger inflicted the fatal blows. Once appellant admitted struggling with the decedent and subsequently disposing of his body, the jury could readily conclude that he delivered the fatal blow. There is substantial evidence in support of the judgment. (*People* v. *Johnson, supra,* 26 Cal.3d 557, 578.)

However, because of the infringement of appellant's *Miranda* rights, the judgment must be reversed.

Franson, Acting P. J., and Andreen, J., concurred.

A petition for a rehearing was denied April 12, 1983, and respondent's petition for a hearing by the Supreme Court was denied June 29, 1983.