[Crim. No. 14164. Third Dist. Feb. 27, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID BRETT POWELL, Defendant and Appellant.

**COUNSEL**

Annette Skovronski, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, W. Scott Thorpe and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**PUGLIA, P. J.**—Following the denial of defendant's *in limine* motion to suppress his confession, he submitted the issue of guilt on the transcript of the preliminary examination. He was found guilty of two counts of burglary and sentenced to state prison.

On appeal defendant contends the motion to suppress his confession was erroneously denied inasmuch as (1) sheriff's officers continued to question him after he asserted his right to counsel, (2) the questioning was intended to elicit his confession, and (3) his waiver of *Miranda* rights was invalid because the officers ignored his prior request to speak with an attorney. For the reasons which follow, we have determined defendant's contentions are without merit.

Defendant burglarized the Pine Grove Market on May 23 and again during the early morning hours of May 25, 1984. On the second occasion, a citizen observed defendant fleeing in a vehicle and notified the sheriff. A sheriff's deputy stopped defendant's vehicle shortly thereafter and arrested him.

At the time of the arrest defendant informed Officer Comden that his name was David Atteberry. Comden found on the defendant a booking slip from the Las Vegas, Nevada, Police Department bearing that name. Defendant had no other identification on his person. Comden placed defendant in the back of a sheriff's car and informed him of his *Miranda* rights.[1] Defendant refused to speak to the officer who nevertheless asked defendant further questions but only to verify his true identity.

After defendant was transported to the jail, the officers unsuccessfully attempted to confirm his identity using a computer and teletype. Officer Comden suspected defendant had not revealed his true name because defendant claimed he had never had a driver's license in any state, a fact the officer considered odd in light of the fact defendant was 30 years of age. Moreover, the only identification defendant had on his person was a booking slip, yet defendant stated he had never been arrested before. Furthermore, defendant seemed quite familiar with the booking process and made statements regarding his rights. For these reasons, Officer Comden asked defendant questions concerning his identity.

Detective Anderson arrived to assist in the investigation. With the admitted intention of obtaining defendant's confession, Detective Anderson read-

---

[1]*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

vised defendant of his *Miranda* rights. Defendant agreed to speak with the officers with the understanding that he could "cease the interview at any time." Less than a minute later defendant said, "I want to talk to an attorney." At that time the officers ceased asking defendant questions concerning the burglary. They did continue to question him, however, regarding his identity, asking for such information as his birth date and last address.

About that time Sergeant Retagliata entered the room, introduced himself to defendant and asked to see defendant's tattoos. Sergeant Retagliata had been called to help in the identification of defendant by examining his numerous tattoos. One tattoo depicted interlocking hearts bearing the initials "D.P. and K.R." When Officer Comden asked defendant why the initials did not match those of the name Dave Atteberry, defendant replied, "I can't tell you." Detective Anderson said, "What do you mean, you can't tell us? You don't really know what the initials are or that you don't want to tell me?" Anderson told defendant that within an hour or so they would know his identity from the Department of Justice by his fingerprints. Defendant then said, "I'll tell you my name. I will give you my name. My name is Powell—Dave Powell. I am an escapee from Michigan State Prison. I will tell you about the burglaries too."

Defendant was again advised of his rights and asked if he "completely and fully" understood them. Defendant replied, "More than you know," and gave a tape-recorded confession to both burglaries.

Relying on *Miranda* v. *Arizona, supra,* defendant contends the police were required to cease questioning him once he had invoked his rights to silence and to counsel. ■ Almost two decades ago the *Miranda* court announced the rule that whenever an individual who is the subject of custodial interrogation indicates in any manner, such as a request for counsel, that he wishes to invoke his right to remain silent, all questions must cease. (*Miranda* v. *Arizona, supra,* at pp. 444-445 [16 L.Ed.2d at pp. 706-707].) Any statements obtained in violation of this rule are inadmissible. (*Ibid.*)

■ However, there are exceptions. "The *Miranda* safeguards are not necessary at a proper booking interview at which certain basic information is elicited having nothing to do with the circumstances surrounding any offense with which the defendant has been charged. (See e.g., *People* v. *Hernandez* (1968) 263 Cal.App.2d . . .; *People* v. *Van Alstyne* (1975) 46 Cal.App.3d 900 . . . .) The booking procedure, as defined by statute (Pen. Code, § 7, subd. 21), has been described as 'essentially a clerical process.' (Kamisar et al., Modern Criminal Procedure (1974) p. 6.) The limited information needed at a booking procedure is required solely for the purposes of internal jail administration, not for use in connection with any criminal

proceeding against the arrestee. When use of this information is confined to those proper purposes, its elicitation cannot be considered incriminatory." (*People* v. *Rucker* (1980) 26 Cal.3d 368, 387 [162 Cal.Rptr. 13, 605 P.2d 843].) Consequently, the rights enumerated in *Miranda,* specifically the right to remain silent and the right to counsel, are not implicated by questions relating only to booking information. Identification of the arrestee is a necessary and legitimate part of the booking process (see *People* v. *Johnson* (1971) 20 Cal.App.3d 168, 173-175 [97 Cal.Rptr. 332]).

Defendant contends the questioning was not for booking purposes, rather it was intended to elicit his confession. ■ It is the duty of the reviewing court to examine the uncontradicted facts to determine independently whether the trial court properly concluded that a confession was admissible. (*People* v. *Jimenez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672].) If those facts establish that the intent of the officers in questioning defendant was to obtain a waiver of his privilege against self-incrimination or to elicit a confession or other statements to be used against him, then *Miranda* safeguards are indeed operative.

Here, the facts are uncontested. Deputy Comden testified that after defendant was placed in his vehicle and advised of his rights he refused to speak with the officers. Comden did not ask defendant any questions about the crime but did ask defendant questions relating to his identity. At the jail, when Comden was unable to verify defendant's identity by computer or teletype, he questioned defendant concerning his identity because he did not believe defendant was Dave Atteberry. Under the circumstances known to Comden his suspicion was justified. Defendant claimed never to have had a driver's license, although he was 30 years old; defendant was familiar with the arrest process and his rights even though he claimed he had never before been arrested; inconsistent with this claim was defendant's possession of a booking slip from a Las Vegas jail.

Detective Anderson candidly admitted that he first approached defendant with the intention of obtaining a confession. He advised defendant of his rights and defendant agreed to speak with the officers but reserved the right to discontinue the questioning if he so chose. Less than a minute later and without making any incriminating admissions, defendant requested a lawyer. Thereafter, until defendant offered to talk about the offense, neither Anderson nor any other officer asked defendant any questions relating to the offense; all questions were intended simply to discover defendant's true identity which the officers were justified in believing he was trying to conceal. Within five to ten minutes after Anderson began his interview, defendant offered to confess. We conclude, as did the trial court, that when defendant offered to confess, the officers were questioning defendant only

for purposes related to the booking procedure, a legitimate purpose for continued inquiry.

Defendant contends his waiver of *Miranda* rights given just before confessing was invalid because the officers ignored his earlier request to Detective Anderson for an attorney. To the contrary, the officers honored defendant's invocation of the right by discontinuing questions related to the crime.

Although Detective Anderson did initiate an interview with defendant with the subjective intent of obtaining his confession after defendant had invoked his privilege against self-incrimination (see *People* v. *Fioritto* (1968) 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625]; *People* v. *Pettingill* (1978) 21 Cal.3d 231 [145 Cal.Rptr. 861, 578 P.2d 108]), that fact is of no significance because the interview, which lasted less than a minute, did not produce any statements regarding the crime.

■ With respect to the validity of defendant's waiver of rights following his offer to confess, it is well established that a suspect who has asserted his rights and terminated further interrogation nonetheless retains the option, thereafter, voluntarily to initiate an interview. (*People* v. *McClary* (1977) 20 Cal.3d 218, 226 [142 Cal.Rptr. 163, 571 P.2d 620]; *People* v. *Johnson, supra,* 20 Cal.App.3d at p. 175.) Defendant's offer to tell the officers about the burglaries was volunteered, not the result of any interrogation about the offenses. When defendant recognized both the futility of continued concealment of his identity and the eventual discovery of his fugitive status, he initiated the second interrogation. Under such circumstances, his waiver was valid.

The judgment is affirmed.

Evans, J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 25, 1986. Reynoso, J., was of the opinion that the petition should be granted.