[No. G001973. Fourth Dist., Div. Three. Apr. 30, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE NUNO VALDIVIA, Defendant and Appellant.

**COUNSEL**

Frederick L. McBride, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert M. Foster and Pat Zaharopoulos, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CROSBY, Acting P. J.**—Is a *Miranda* warning necessarily defective for failure to specifically include an advisement of a right to an attorney during, as well as before, questioning?[1] To this and several related issues, we conclude not.

I

The bullet-punctured corpse of a male adult was found on the sidewalk in front of the Siete Leguas Bar in Santa Ana in the early morning hours of October 1, 1983. A white Chevrolet was parked nearby. The barmaid told investigating officers the driver of the vehicle had a gun and argued with the victim that evening. She was able to give them a physical description of the man, but not his name. The victim's roommate identified the car's owner as Jose Valdivia, however, and said he worked in the same pizza restaurant as the victim.

A Department of Motor Vehicles check confirmed the vehicle was registered to a Jose Valdivia, and the manager of the restaurant where he was employed gave officers a photograph of him. They also obtained several possible addresses from different sources. None proved fruitful until they were invited into the home of Juan Roman, who officers believed was Valdivia's brother. Just as they were explaining to Roman why they were there, Valdivia walked out of a bathroom. An officer recognized him from the photograph. He asked Valdivia his name. At Roman's prompting in Spanish, Valdivia responded, "Damasio Cruz." Valdivia denied knowing of the shooting, owning a white Chevrolet, or working at the pizza restaurant; but the officers were not persuaded.

Valdivia was handcuffed and transported to the Santa Ana Police Department. Officers tape recorded the *Miranda* warning, which was given in Spanish. The translated transcription reads: "[Officer]: Just tell me 'yes' or 'no,' okay? You have the right to remain silent; do you understand me? If you say anything, like anything that you say, if—if we can, we are going to use it against you in a court of law. Do you understand? Do you understand

---

[1]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

me? You have the right to remain silent; do you understand me? No? Yes or no? [¶] [Defendant]: Well, yes. [¶] [Officer]: If—if you say anything, anything that you say will be used against you in a court of law, and will be used, just in case we are able to use it; do you understand? [¶] [Defendant]: Yes. [¶] [Officer]: Okay. You have the right of attorney, to speak with an attorney and to have him present before any question; do you understand me? [¶] [Defendant]: Yes. . . .'' Valdivia eventually admitted shooting the victim, but claimed it was in self-defense.

Valdivia's Penal Code section 1538.5 motion to suppress his statements at Roman's home and after the *Miranda* advisement was denied. Other pretrial and midtrial procedures to exclude the evidence also failed, and his prearrest statements were repeated for the jury and the transcription of his in-custody interview was read into the record.

Valdivia was convicted of voluntary manslaughter. He contends the pre-*Miranda* statements in his brother's house should have been excluded. The in-custody interview is also flawed, he argues, because the *Miranda* advisement was incomplete and misleading, although he has yet to claim he was confused or misled.

## II

 Because the officers had probable cause to arrest him on sight, Valdivia contends they were obliged to give the *Miranda* warning before asking any questions at his brother's home. Not so. Although he was obviously not free to go until the officers resolved the question of his identity, Valdivia was not advised of that: ''*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.''' (*Oregon* v. *Mathiason* (1977) 429 U.S. 492, 495 [50 L.Ed.2d 714, 719, 97 S.Ct. 711].) Our Supreme Court expressed the principle in a similar fashion: ''While arrest is not a condition precedent to the right to *Miranda* and *Dorado* warnings,[2] custody is: the vice requiring the prophylaxis of the notice of rights is the inherently coercive atmosphere pervading *custodial* interrogation. [Citation.] Since at the time of their admissions the [defendants] were not restrained in any way . . . any coercion operating on [them] was not attributable to their being in custody.'' (*People* v. *Leach* (1975) 15 Cal.3d 419, 443 [124 Cal.Rptr. 752, 541 P.2d 296].) Thus, custody, as the cases define it, contains two elements: actual restraint of freedom combined with the suspect's understanding of that restraint. Only the former occurred here.

---

[2]*People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

Although Valdivia was a suspect when the initial questioning occurred, the contact came in the home of his brother, who was also present. The officers did not draw their weapons or place him under arrest. Thus, the encounter was not coercive.

Moreover, Valdivia was not subjected to an interrogation designed to elicit a confession. He was asked but a few preliminary and general identification questions which were not in themselves coercive. ▓▓ Questioning for the purpose of establishing an individual's identity need not be preceded by *Miranda* warnings (*California* v. *Byers* (1971) 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535]; *People* v. *Powell* (1986) 178 Cal.App.3d 36 [223 Cal.Rptr. 475]), although information obtained at booking "cannot be put to any incriminatory uses." (*People* v. *Rucker* (1980) 26 Cal.3d 368, 389 [162 Cal.Rptr. 13, 605 P.2d 843].)

▓▓ Finally, even were we to conclude the statements were improperly received, reversal would not be required here. Valdivia's denials of knowledge of the killing or of his own car and employment at the initial contact were no more damning than his use of a false name, which was obviously admissible. They proved but the same thing, his consciousness of guilt.

### III

▓▓ As noted above, the *Miranda* warning given to Valdivia in Spanish at the police station was taped, translated, and transcribed. Relying on *United States* v. *Noti* (9th Cir. 1984) 731 F.2d 610 [77 A.L.R.Fed. 111], he contends the in-custody interview should have been suppressed. Noti was told only that he had "the right to the services of an attorney before questioning . . . ." (*Id.*, at p. 614.) A divided panel of the Ninth Circuit determined that warning was inadequate because the officer failed to advise of his right to counsel both before and *during* questioning. In so holding, the *Noti* majority relied on an earlier Fifth Circuit opinion, *Windsor* v. *United States* (5th Cir. 1968) 389 F.2d 530. (But see *United States* v. *Pheaster* (9th Cir. 1976) 544 F.2d 353 and *People* v. *Winkler* (1986) 178 Cal.App.3d 750 [224 Cal.Rptr. 28].)

In *Windsor* the defendant was arrested one day after the Supreme Court announced its decision in *Miranda.* When FBI agents contacted him, they advised "he was not under arrest and was not being detained in any way and was not to construe this as being detained; that he did not have to make a statement; . . . and that he could speak to an attorney or anyone else *before he said anything at all.*" (*Id.*, at p. 532.) The Fifth Circuit reversed his conviction because "[m]erely telling him that he could speak with an attorney or anyone else before he said anything at all is not the same as

informing him that he is entitled to the presence of an attorney during interrogation and that one will be appointed if he cannot afford one." (*Id.*, at p. 533.)

Not all federal circuits are in agreement with this position, however. Although the precise warnings given to the defendant in *United States* v. *Adams* (7th Cir. 1973) 484 F.2d 357 were not available to the appellate court, the panel assumed "the card did not include the warning regarding the presence of an attorney . . . ." (*Id.*, at pp. 361-362.) Even so, the court found the warning to be sufficient.

Earlier, the Second and Seventh Circuits reached similar results. The warning in *United States* v. *Lamia* (2d Cir. 1970) 429 F.2d 373 included only the statement that the defendant "had a right to an attorney, if he wasn't able to afford an attorney, an attorney would be appointed by the court." (*Id.*, at pp. 374-375.) The court noted the defendant "was apprised that an attorney would be appointed if he was unable to afford one, and was told nothing that would suggest any restriction on the attorney's functioning. We find that the substance of the required warnings was given." (*Id.*, at p. 377; see also *California* v. *Prysock* (1981) 453 U.S. 355 [69 L.Ed.2d 696, 101 S.Ct. 2806].)

In *Tasby* v. *United States* (8th Cir. 1971) 451 F.2d 394, the defendant was advised only that an attorney would be appointed "'at the proper time.'" (*Id.*, at p. 398.) The Seventh Circuit panel agreed this admonition, "even though a slight deviation from the *Miranda* prescription, [did] not negate the over-all effectiveness of the warning" and affirmed the convictions. (*Id.*, at pp. 398-399.)

Finally, we turn to the language of *Miranda* v. *Arizona, supra,* 384 U.S. 436 itself. There, the Supreme Court announced, "unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." (*Id.*, at p. 444 [16 L.Ed.2d at pp. 706-707].)

While the warning given to Valdivia deviated somewhat from the accepted form, we are unpersuaded that the words were facially ambiguous or would have caused most people to believe counsel would only be provided before questioning and then whisked away once it began. A far more reasonable interpretation of the disputed language is that Valdivia had the unfettered

right to consult with and have counsel physically present before and at the interrogation, as *Lamia* suggests.

We concede the warning used here may give rise to a factual issue as to whether a defendant was confused in a particular case. Any oral statement, no matter how clear, may be misunderstood. But Valdivia made no claim of actual confusion or misapprehension in the trial court, nor does he do so here.

## IV

Valdivia next complains the advising officer impermissibly weakened the required warning that anything he said could and would be used against him, by adding the words "if we can" and "just in case we are able to use it." Defense counsel argues, "it would seem apparent that [Valdivia] was being told that there was some sort of condition subsequent to the use of [his] statements. Such a suggestion was misleading at best." Again, we cannot agree. The officer was literally stating the truth: Some statements will be permitted in evidence, others not. But, more to the point, the warning was couched in sufficient certainty to suit its purpose, i.e., to warn Valdivia that his words could be used against him in court: ". . . *Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures. The court in that case stated that '[t]he warnings required and the waiver necessary in accordance with our opinion today are, *in the absence of a fully effective equivalent,* prerequisites to the admissibility of any statement made by a defendant.' [Citations.]" (*California* v. *Prysock, supra,* 453 U.S. 355, 359-360 [69 L.Ed.2d 696, 701], italics supplied by the court.)

While not a model to be emulated, the warning here was adequate. In the latter part of the *Miranda* opinion ". . . the Court employed the overstatement 'can and will be used.' But at an earlier point the Court described the warning as being that what is said 'may be used,' and this alternative has been consistently approved by the lower courts. The courts have also upheld other formulations, including use of 'can' alone, of 'might,' and of 'could.'" (1 LaFave & Israel, Criminal Procedure (1984) § 6.8, p. 516, fns. omitted; cf. *Giomi* v. *Department of Motor Vehicles* (1971) 15 Cal.App.3d 905 [93 Cal.Rptr. 613] and *Smith* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 499 [81 Cal.Rptr. 800].)

Judgment affirmed.

**WALLIN, J.,** Concurring.— This opinion presents the second opportunity for our court to review the adequacy of a *Miranda* warning in

light of *United States* v. *Noti* (9th Cir. 1984) 731 F.2d 610 [77 A.L.R.Fed. 111]. In the first case I reluctantly agreed to follow *Noti* and concurred in a result holding a warning similar to the one given to Valdivia was insufficient. I now note my previous reluctance to accept *Noti* mirrors the view of Justice Crosby. Since the Supreme Court, without explanation, decertified our prior opinion which followed *Noti*, I assume my original reluctance is shared by others and concur in affirming this judgment.

**SONENSHINE, J.**, Concurring.— ██ ██ ██ ██ I concur in the judgment and the majority's reasoning with the exception of Part III (majority opn., *ante*, pp. 662-664).

A *Miranda*[1] waiver is not sufficient unless it informs a suspect he or she has a right to the presence of an attorney *during* questioning. Hence, I agree with the majority in *United States* v. *Noti* (9th Cir. 1984) 731 F.2d 610 [79 A.L.R.Fed. 111] and the court in *Windsor* v. *United States* (5th Cir. 1968) 389 F.2d 530.

I, too, turn to the language of *Miranda*: "[A]n individual held for interrogation must be *clearly informed* that he [or she] has the right to consult with a lawyer *and to have the lawyer with him* [or her] *during interrogation.*" (*Miranda* v. *Arizona, supra*, 384 U.S. 436, 471 [16 L.Ed.2d 694, 722], italics added.) "No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given." (*Id.*, at p. 470 [16 L.Ed.2d at p. 721].)

*California* v. *Prysock* (1981) 453 U.S. 355 [69 L.Ed.2d 696, 101 S.Ct. 2806][2] is often cited for the proposition latitude is permitted in the language of the advisement: "If a defendant has been told the substance of his [or her] constitutional rights, it is not fatal if irrelevant words or words with no independent substance are omitted. [Citation.]" (*United States* v. *Noti, supra*, 731 F.2d 610, 614-615.) But Prysock was told: "'You have the right to talk to a lawyer before you are questioned, have him present with you while you are being questioned, and all during the questioning.'" (*California* v. *Prysock, supra*, at p. 356 [69 L.Ed.2d at p. 699].) And while the *Prysock* majority does say a "talismanic incantation" of *Miranda*'s language is not required, it also observes the question is "whether a criminal defendant was adequately informed of his right to the presence of appointed counsel prior to and *during* interrogation . . . ." (*Id.*, at p. 360 [69 L.Ed.2d at p. 701], italics added.)

---

[1]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [96 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[2]On remand see *People* v. *Prysock* (1982) 127 Cal.App.3d 972 [180 Cal.Rptr. 15].

There is an additional difficulty with reliance on the federal cases cited by the majority in support of its conclusion on this point. California has a higher burden of proof—beyond a reasonable doubt—the *prosecution* must bear to demonstrate voluntariness. (*People* v. *Jimenez* (1978) 21 Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672].) An inadequate *Miranda* warning renders any subsequent statement involuntary and inadmissible. (See *In re Martinez* (1970) 1 Cal.3d 641, 648-649 [83 Cal.Rptr. 382, 463 P.2d 734]; *People* v. *Diaz* (1983) 140 Cal.App.3d 813, 819-824 [189 Cal.Rptr. 784]; *In re Albert R.* (1980) 112 Cal.App.3d 783, 788-789 [169 Cal.Rptr. 553].) The federal standard, embodied in *Lego* v. *Twomey* (1972) 404 U.S. 477, 489 [30 L.Ed.2d 618, 627, 92 S.Ct. 619], requires the prosecution only prove voluntariness by a preponderance of the evidence.

Unfortunately, the viability of the *Jimenez* standard after Proposition 8 currently has our state's intermediate appellate courts divided. Some say the *Jimenez* standard is unaffected. (See, e.g., *People* v. *Azure* (1986) 178 Cal.App.3d 591 [224 Cal.Rptr. 158]; *People* v. *Molina* (1986) 177 Cal.App.3d 429 [222 Cal.Rptr. 894]; *People* v. *Marzett* (1985) 174 Cal.App.3d 610 [220 Cal.Rptr. 217]; *People* v. *Clark* (1985) 171 Cal.App.3d 889 [217 Cal.Rptr. 819]; *People* v. *Navarez* (1985) 169 Cal.App.3d 936 [215 Cal.Rptr. 519]; *People* v. *Givans* (1985) 166 Cal.App.3d 793 [212 Cal.Rptr. 762]; *People* v. *Barrios* (1985) 166 Cal.App.3d 732 [212 Cal.Rptr. 644]; *People* v. *Jacobs* (1984) 158 Cal.App.3d 740 [204 Cal.Rptr. 849].) Others say *Lego* v. *Twomey* embodies the appropriate standard in the post-Proposition 8 era (see *People* v. *Garcia* (1986) 178 Cal.App.3d 683 [224 Cal.Rptr. 22]; *People* v. *Reese* (1986) 177 Cal.App.3d 1094 [223 Cal.Rptr. 343]).[3] (See generally, *People* v. *Weaver* (1985) 39 Cal.3d 654 [217 Cal.Rptr. 245, 703 P.2d 1139]; *Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802 [210 Cal.Rptr. 204, 693 P.2d 789].)[4]

I believe *Jimenez* survives. And because the standard of proof for voluntariness is so high (see *People* v. *Diaz, supra,* 140 Cal.App.3d 813, 819-824), this substantial deviation from the specific requirements of *Miranda* is fatal to the admissibility of Valdivia's post-*Miranda* statement.[5]

That leaves the issue of prejudice. In his statement, Valdivia admitted shooting the victim, but claimed self-defense. In other words, he tried to

---

[3]The division goes further: *Azure*, *Reese* and *Clark* contain dissents on this point.

[4]The issue is also pending before our Supreme Court. (*People* v. *May*, review granted Nov. 27, 1985 (Crim. 24991).)

[5]The current viability of *Jimenez* and the *Miranda* requirement at issue here present difficult issues bearing examination by our state's highest court, and, with respect to the latter issue, the United States Supreme Court.

exculpate himself. At trial, other witnesses suggested Valdivia shot in self-defense.

Valdivia's statement was an admission, not a confession. (*People* v. *Diaz, supra,* 140 Cal.App.3d 813, 817, fn. 1; see also *People* v. *McClary* (1977) 20 Cal.3d 218, 230 [142 Cal.Rptr. 163, 571 P.2d 620].) Its improper admission into evidence is not reversible error if the People can show beyond a reasonable doubt the error did not contribute to the verdict. (*People* v. *McClary, supra,* at p. 230; see also *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 756 [175 Cal.Rptr. 738, 631 P.2d 446].) The statement was fully consistent with Valdivia's defense; it did not prejudice him.[6] Accordingly, I concur in the judgment affirming the conviction.

A petition for a rehearing was denied May 16, 1986, and appellant's petition for review by the Supreme Court was denied July 24, 1986.

---

[6]Given the other evidence, it is not at all probable Valdivia would have chosen a different defense had he not been called upon to deal with his post-*Miranda* statement.