Filed 9/15/20  P. v. Guerrero CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B292313 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA427590-04) |
| v. | |
| ALEJANDRA GUERRERO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, George G. Lomeli, Judge.  Convictions affirmed; matter remanded for resentencing.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Acting Senior Assistant Attorney General, Scott A. Taryle and Viet H. Nguyen, Deputy Attorneys General for Plaintiff and Respondent.

————————————

Alejandra Guerrero was convicted of special circumstance murder and sentenced to life without parole for crimes committed when she was 16 years old. On appeal Guerrero contends the jury's special circumstance finding is not supported by substantial evidence; the trial court erred in denying her motion to suppress statements obtained in violation of her rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*); and the court abused its discretion in failing to consider youth-related mitigating factors identified in *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*) before sentencing her to life without parole. We affirm Guerrero's convictions and remand for a new sentencing hearing so the court may satisfy its statutory obligation to consider youth-related mitigating factors before exercising its sentencing discretion under Penal Code section 190.5, subdivision (b).[1]

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Amended Information*

An amended information filed May 15, 2015 charged Guerrero with the murder of Xinran Ji (§ 187), second degree robbery of Claudia Rocha (§ 211), attempted second degree robbery of Jesus Ontiveros (§§ 664, 211) and assault with a deadly weapon on Ontiveros (§ 245, subd. (a)(1)). The information specially alleged Guerrero had committed the murder during an attempted robbery (§ 190.2, subd. (a)(17)) and had personally used a deadly or dangerous weapon during the murder of Ji (a wrench) and the robbery of Rocha (a knife)

---

[1]     Statutory references are to this code unless otherwise stated.

(§ 12022, subd. (b)(1)). Guerrero pleaded not guilty and denied the special allegations.

2. *Guerrero's Trial*

According to the evidence presented at Guerrero's trial, in July 2014 Guerrero, along with her confederates, 17-year-old Alberto Ochoa, 18-year-old Andrew Garcia and 19-year-old Jonathan Del Carmen, decided to go "flocking," a term Guerrero told police meant to rob someone. They found Ji, a 24-year-old USC graduate student, walking home to his apartment from a study session just after midnight. Guerrero, Ochoa and Garcia got out the car to rob Ji. Del Carmen, the driver, and a 14-year-old girl who was also with the group, remained in the car.

When Guerrero, Garcia and Ochoa confronted Ji, he refused to relinquish his possessions. Ochoa hit Ji with a metal baseball bat; Garcia punched Ji in the eye, breaking his glasses and causing Ji to bleed "a lot"; and Guerrero punched or pushed Ji. Ji managed to break free from his attackers and ran down the street screaming for help. Garcia and Guerrero chased Ji on foot. Ochoa, who had given the bat to Garcia, joined Del Carmen and followed in the car. When Guerrero and Garcia caught up to Ji, they beat him some more. Garcia hit Ji in the head with the bat; Guerrero hit Ji with a wrench. (Guerrero told police she had acted defensively by hitting Ji in the hands with the wrench when he grabbed her during the second attack.) Garcia and Guerrero stopped their assault and ran back to the car when they saw Del Carmen begin to drive away. The group left the scene as Ji lay covered in blood with a fractured skull. Ji managed to get up and return to his nearby apartment, where he died a short time later from his head wounds. The attack was captured on surveillance cameras and played for the jury.

3

Following the attack on Ji, the group drove to the beach where they encountered Rocha and Ontiveros and demanded the couple's possessions. Guerrero was again armed, this time with a knife; Ochoa held the metal bat. Ontiveros stepped in front of Rocha to protect her. After Ontiveros lost his footing and fell to the ground, Ochoa swung the baseball bat at Ontiveros's head. Ontiveros blocked the blow with his arm. Rocha complied with the group's demands. Ontiveros managed to escape and flag down police officers on patrol. Guerrero and her companions were arrested a short time later.

3. *The Jury's Verdict*

The jury found Guerrero guilty of first degree felony murder as an aider and abettor of the attempted robbery of Ji and found true the special allegation the murder was committed during an attempted robbery; Guerrero was a major participant in the attempted robbery; and, while not the actual killer, Guerrero had acted with reckless indifference to human life. The jury also found true the special allegation Guerrero had personally used a deadly or dangerous weapon in connection with the felony murder. In addition, the jury found Guerrero guilty of the robbery of Rocha, the attempted robbery of Ontiveros and the aggravated assault on Ontiveros and found true the special allegation that Guerrero had personally used a deadly or dangerous weapon in the robbery of Rocha.

4.  *Remand for a Transfer Hearing in Juvenile Court, Return to Adult Criminal Court and Imposition of Sentence*

Prior to sentencing Guerrero successfully moved, without objection, to remand her case to juvenile court for a transfer hearing pursuant to then-newly adopted Proposition 57, the Public Safety and Rehabilitation Act of 2016, which repealed prior statutory provisions permitting the direct filing in adult criminal court of certain cases involving juveniles.  Following the hearing the juvenile court found Guerrero's case should not be retained in juvenile court and transferred the matter back to adult criminal court.

In July 2018 Guerrero was sentenced to life without parole for special circumstance murder pursuant to section 190.5, subdivision (b), plus one year for the personal use of a deadly or dangerous weapon.  In addition, the court imposed a consecutive determinate term of three years for the robbery of Rocha, a consecutive term of eight months for the attempted robbery of Ontiveros and a consecutive term of one year for the aggravated assault of Ontiveros.[2]  The court explained it was imposing consecutive sentences on the determinate terms because the crime involved great violence, a high degree of cruelty and the victim was particularly vulnerable.  (Cal. Rules of Court, rule 4.421(a)(1), (3).)

---

[2]   Despite the jury's true finding on the personal use of a dangerous weapon in connection with the robbery of Rocha (count 2), the court did not impose or otherwise address the weapon enhancement on count 2.

5

**DISCUSSION**

1. *Substantial Evidence Supports the Jury's Special Circumstance Finding*

   a. *Standard of review*

In considering a claim of insufficient evidence in a criminal case, "'we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]"  [Citation.]  A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict.'"  (*People v. Penunuri* (2018) 5 Cal.5th 126, 142; accord, *People v. Zamudio* (2008) 43 Cal.4th 327, 357; see *People v. Westerfield* (2019) 6 Cal.5th 632, 713.)

6

### b. *Substantial evidence supports the finding Guerrero acted with reckless indifference to human life*

Section 190.2, subdivision (d), provides in part that "every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of [an enumerated] felony [including robbery] which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole." The statute "imposes both a special actus reus requirement, major participation in the crime, and a specific mens rea requirement, reckless indifference to human life." (*People v. Banks* (2015) 61 Cal.4th 788, 798.)

Guerrero concedes there is substantial evidence she was a major participant in the attempted robbery of Ji. However, she contends there was insufficient evidence she acted with reckless indifference to human life. Reckless indifference to human life means the defendant has ""'knowingly engag[ed] in criminal activities known to carry a grave risk of death.'" [Citations.] The defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create." (*People v. Banks, supra,* 61 Cal.4th at p. 801, citing *Tison v. Arizona* (1987) 481 U.S. 137, 157.)[3] In this way, reckless indifference to human life contains

_____

[3] Although the concepts of "major participant" and "reckless indifference to human life" originally developed in death penalty cases, the California Supreme Court has held the standards "apply equally" to cases involving statutory eligibility for life

both a subjective and objective element. "The subjective element is the defendant's conscious disregard of risks known to him or her. But recklessness is not determined merely by reference to a defendant's subjective feeling that he or she is engaging in risky activities. Rather recklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation.'" (*People v. Clark* (2016) 63 Cal.4th 522, 617.)

In determining whether a defendant acted with reckless indifference, relevant factors to consider include the defendant's (1) knowledge that weapons would be used and the defendant's use of a weapon; (2) physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) the duration of the felony; (4) knowledge of his or her cohort's likelihood of killing; and (5) efforts to minimize the risk of the violence during the felony. (*People v. Clark, supra,* 63 Cal.4th at pp. 618-623.) No single factor is necessary or necessarily sufficient. (*Id.* at p. 618; accord, *People v. Banks*, *supra*, 61 Cal.4th at p. 803; *In re Bennett* (2018) 26 Cal.App.5th 1002, 1021.) Mere participation in the underlying felony, or an awareness that a confederate was armed during that felony,

---

without parole. (See *People v. Banks, supra,* 61 Cal.4th at p. 804; see also §§ 190.2, subd. (d), par. 2 ["[t]he penalty shall be determined as provided in this section and Sections 190.2, 190.3, 190.4 and 190.5"]; 190.5, subd. (b) [authorizing sentence of 25 years to life or life without parole, at the trial court's discretion, for 16- and 17-year-old defendants convicted of special circumstance murder].)

8

without more, is insufficient to support a finding of reckless indifference to human life.  (*Clark*, at pp. 616-618.)[4]

In contending the evidence was insufficient to support a finding she acted with reckless indifference to human life, Guerrero asserts there was "no evidence" she knew Ochoa or Garcia would use a baseball bat to assault Ji, let alone hit him so violently; no evidence that she or her confederates had a history of deadly violence; no evidence that she supplied or used the baseball bat on Ji; the felony lasted less than two minutes; and she was younger than Ochoa and Garcia and, "realistically," had no ability to prevent or influence the attack by her older confederates.

Contrary to Guerrero's contention, the record contains ample evidence of her reckless indifference to human life sufficient to support the jury's special circumstance finding. Guerrero, armed with a wrench, got out of the car to confront Ji. She not only was aware Ochoa had brought a bat with him, but also saw him violently hit Ji with the bat before Ji managed to escape temporarily and run down the street.  Rather than returning to the car after that violent encounter, Guerrero chased Ji down, hitting him with a wrench while Garcia beat him in the

---

[4]  Guerrero's jury was instructed with CALCRIM No. 8.80.1, which provides, "A defendant acts with reckless indifference to human life when that defendant knows or is aware that her acts involve a grave risk of death to an innocent human being.  By participating in a violent felony with lethal weaponry, one should reasonably foresee that bloodshed is a possibility.  However, awareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient; only knowingly creating a 'grave risk of death' is sufficient."

head with the bat, all while Ji was on the ground bleeding and crying. (Her 14-year-old confederate, in contrast, remained in the car.) Guerrero told police Ji had bled profusely during the initial attack; yet she continued to attack him a second time after he had tried to escape. Despite all this violence, it was only when Del Carmen pulled the car away that Guerrero stopped her attack on Ji and returned to the car, not to go home or to call for help, but to commit additional robberies, armed again with a deadly weapon.

Emphasizing she was "barely 16 years old" at the time Ji was killed, Guerrero urges her reckless indifference must be viewed through the lens of a 16-year-old and, in particular, with regard to the well-established fact that teenagers are "inherently reckless." (See generally *Miller*, *supra*, 567 U.S. at p. 71 [a ""'lack of maturity'" and [an] "'underdeveloped sense of responsibility'" lead to reckless, impulsivity, and heedless risk-taking" in children]; *Graham v. Florida* (2010) 560 U.S. 48, 91-92 ["Graham's youth made him relatively more likely to engage in reckless and dangerous criminal activity than an adult"] (conc. opn. of Roberts, C. J.); *Roper v. Simmons* (2005) 543 U.S. 551, 569 ["[i]t has been noted that 'adolescents are over-represented statistically in virtually every category of reckless behavior'"].)

Guerrero made this same argument to the jury; and the jury was instructed that, to find the special circumstance allegation true, it had to find Guerrero appreciated the grave risk of death her conduct posed, a subjective evaluation that necessarily required consideration of her youth and experience. (Cf. *People v. Mil* (2012) 53 Cal.4th 400, 419 [failure to instruct jury it must find defendant, who was not the actual killer, was a

major participant and "subjectively aware of a grave risk of death" when he participated in burglary and robbery was prejudicial error requiring reversal of the special circumstance finding].)

Guerrero asserts the standard of "reckless indifference to human life," a standard initially derived from death penalty sentencing applicable only to adults,[5] has the unintended effect of punishing a juvenile more than her adult counterpart for the same crime due to the juvenile's inherent predisposition for reckless behavior. The opposite is true. To comport with the Eighth Amendment, a juvenile's recklessness, among other youth-related mitigating factors, must be considered by the sentencing court before a life without parole sentence may be constitutionally imposed. (See *Miller*, *supra*, 567 U.S. at p 471 [recognizing "children are constitutionally different from adults for sentencing purposes"]; *Montgomery v. Louisiana* (2016) 577 U.S. __ [136 S.Ct. 718, 193 L.Ed.2d 599].) Moreover, in California juveniles are entitled to a mandatory youth offender parole hearing during their 25th year of incarceration, transforming a life without parole sentence for someone like Guerrero to one affording a meaningful opportunity for release. (See § 3051, subd. (b)(4); *People v. Franklin* (2016) 63 Cal.4th 261, 279-280.)

---

[5] See section 190.5, subd. (a) [prohibiting death penalty for juvenile defendants]; see also fn. 3, above].)

11

2. *The Court Did Not Err in Denying Guerrero's Motion To Suppress Her Custodial Statements*

a. *Governing law and standard of review*

"As a prophylactic safeguard to protect a suspect's Fifth Amendment privilege against self-incrimination, the United States Supreme Court, in *Miranda*, required law enforcement agencies to advise a suspect, before any custodial law enforcement questioning, that 'he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.'" (*People v. Martinez* (2010) 47 Cal.4th 911, 947, quoting *Miranda*, *supra*, 384 U.S. at p. 479.) These "*Miranda* admonitions" must be given, and a suspect in custody must knowingly and intelligently waive those rights before being subjected to either express questioning or its "functional equivalent." (*Rhode Island v. Innis* (1980) 446 U.S. 291, 300-301; *People v. Ray* (1996) 13 Cal.4th 313, 336.)

"Juveniles, like adults, may validly waive their *Miranda* rights." (*People v. Jones* (2017) 7 Cal.App.5th 787, 809; accord, *People v. Nelson* (2012) 53 Cal.4th 367, 375 [15 year old validly waived *Miranda* rights]; *People v. Lessie* (2010) 47 Cal.4th 1152, 1169 [16 year old validly waived *Miranda* rights].) The People bear the burden of proving by a preponderance of the evidence a suspect's *Miranda* waiver is knowing, intelligent and voluntary under the totality of the circumstances. (*People v. Duff* (2014) 58 Cal.4th 527, 551; *People v. Linton* (2013) 56 Cal.4th 1146, 1171.) When a juvenile's waiver of his or her *Miranda* rights is at issue, "'consideration must be given to factors such as the juvenile's age, experience, education, background, and

12

intelligence, and . . . whether he [or she] has the capacity to understand the warnings given [to him or her], the nature of his [or her] Fifth Amendment rights, and the consequences of waiving those rights.'" (*Nelson*, at p. 375; accord, *J.D.B. v. North Carolina* (2011) 564 U.S. 261, 277 [age of child subject to police questioning is relevant to *Miranda* analysis].)

In reviewing a trial court's *Miranda* ruling, we accept the court's resolution of disputed facts and inferences and its evaluations of credibility, if supported by substantial evidence, but we independently decide whether the challenged statements were obtained in violation of *Miranda.* (*People v. Hensley* (2014) 59 Cal.4th 788, 809; accord, *People v. Jones, supra,* 7 Cal.App.5th at p. 809.)

> b. *Guerrero's custodial interviews and suppression motions*

> i. The July 24, 2014 interview

At the beginning of Guerrero's first custodial interview Los Angeles Police Detective Luis Jurado stated, "Alejandra, I know we talked about your rights early [*sic*]. Uh, but we just wanna make sure it's okay we talk, okay?" Guerrero responds, "Uh-huh." Jurado and his partner then starting questioning Guerrero about the incident at the beach. The video recording of the interview does not contain any *Miranda* advisement. During this interview Guerrero acknowledged, but minimized, her involvement in the beach robberies. She denied unfolding the knife or trying to steal Rocha's purse. According to Guerrero, Rocha's money just fell out; and Guerrero picked up a $5 bill and gave it to Del Carmen for gas money. Guerrero was not asked about, and did not mention, the attack on Ji in this interview.

13

Guerrero moved to suppress her statements during the July 24, 2014 interview on the ground she had not been advised of her *Miranda* rights. At the hearing on Guerrero's motion Detective Jurado testified he and his partner had arrested Guerrero at 4:10 p.m. on July 24, 2014 and interviewed her at 6:30 p.m. at the police station. Jurado stated that, immediately after her arrest, while driving Guerrero to the police station, he advised Guerrero of her right to remain silent; if she gave up that right anything she said can and would be used against her in a court of law; she had the right to an attorney; if she could not afford an attorney, the court would appoint one for her free of charge. After each statement he looked in the car's rearview mirror and asked Guerrero, who was sitting in the backseat of the police car, whether she understood. Each time, she nodded affirmatively and said "yeah."

Detective Jurado explained he had decided at the station to refer to his prior advisement, rather than to readvise Guerrero of her *Miranda* rights at the beginning of the recorded interview, because "I had already spoken to her about her rights." On cross-examination Detective Jurado acknowledged he had inquired about Guerrero's age, but not about Guerrero's grade in school or whether she had a learning disability. (No evidence was offered by either party on those matters.) He also explained neither he nor his partner nor the car in which they drove Guerrero to the police station was equipped with a recording device.

After both counsel had completed their questioning of Detective Jurado, the court asked him whether Guerrero had exhibited any behavior or given any indication she had difficulty comprehending Jurado's statements, either in the car or during the interview. Jurado responded, "No, she didn't. If there was

14

any question as to what I was asking, or if I needed clarification, in fact, Ms. Guerrero was able to ask questions or clarify, make a distinguishment, and offer me some kind of response to whatever clarification she needed."

The court denied Guerrero's motion to suppress the July 24, 2014 statement, ruling that, although Detective Jurado's method of giving a *Miranda* advisement while driving and looking through a rearview mirror for some acknowledgment that the advisement was understood was "unorthodox," the advisement had been given and understood with an audible "yes."

ii.  The July 25, 2014 (second) interview

Los Angeles Police Detective Paul Shearhold began Guerrero's July 25, 2014 custodial interview by stating, "Now I understand detectives talk[ed] to you. . . ."  "When they talked to you did they read you your rights?  Do you remember that?"  Guerrero responded, "I don't think so."  Shearhold then read to Guerrero the appropriate *Miranda* advisements.  After advisement of each right Shearhold asked Guerrero if she understood, and Guerrero replied each time, "Yes."  Shearhold and his partner then questioned Guerrero about Ji's murder.  Guerrero offered several different versions of events, first stating that she merely acted as a lookout, then revising that story when confronted with the existence of surveillance footage showing her participating in the attack on Ji.  Guerrero ultimately said she had acted defensively by hitting Ji in the hand with a wrench when he grabbed her and tried to prevent her from returning to the car.

At the hearing on Guerrero's motion to suppress this statement, Guerrero's counsel argued that, as a 16 year old, Guerrero did not understand her rights and thus could not have

knowingly and intelligently waived them. The court denied the motion, finding Guerrero had knowingly, intelligently and voluntary waived her *Miranda* rights and agreed to talk to the officers.

      c.  *Substantial evidence supports the court's finding Guerrero was given and understood her Miranda rights before making her first statement; in any event any error in admitting the first statement into evidence was harmless beyond a reasonable doubt*

Guerrero contends there was insufficient evidence she received *Miranda* advisements prior to her first statement and no evidence she understood those advisements even if they were given. Contrary to Guerrero's contention, Detective Jurado testified he advised Guerrero of her rights in the car immediately following her arrest. Jurado also testified he asked Guerrero whether she understood each advisement and, after each statement, she said yes and nodded her head affirmatively. That testimony is more than sufficient to support the court's finding Guerrero was given and understood her *Miranda* rights. (See *People v. Lessie*, *supra*, 47 Cal.4th at pp. 1169-1170 ["[n]othing in the record suggests [16-year-old] defendant was unable to understand, or did not understand, the meaning of the rights to remain silent and to have the assistance of counsel, and the consequences of waiving those rights"].)

Relying on *People v. Diaz* (1983) 140 Cal.App.3d 813, 818-819, Guerrero contends, absent an audio or video recording of the exchange in the car, Detective Jurado's testimony is insufficient to support the court's finding the *Miranda* advisements were given. In *Diaz* police officers interviewed the defendant on two occasions. The second interrogation was recorded; the first was not. At the second interrogation the defendant provided an

16

ambiguous response when given the *Miranda* advisements and asked if he understood them. The trial court excluded the defendant's statements at the second interview, concluding the People had not established the defendant understood and knowingly and intelligently waived his rights. However, the court allowed the statements the defendant had made in the first interview to be introduced into evidence based solely on the interrogating officer's testimony the defendant had been given and waived his *Miranda* rights. The court of appeal reversed, holding, "If one concludes that an effective waiver was not made at the time the tape recorder was turned on, it is highly unlikely that a knowing and intelligent waiver could have been made prior to the earlier statement. A person does not understand his rights at 11 a.m. only to lose his comprehension by noon. Thus, . . . where the only evidence of an effective waiver was the testimony of Deputy Sheriff Salas, it would appear the trial court erred by admitting appellant's statement into evidence." (*Id.* at p. 821.)

Contrary to Guerrero's suggestion, *Diaz* does not hold a police officer's testimony, without more, is constitutionally insufficient to support a finding *Miranda* advisements were given and waived. (See *People v. Weaver* (2001) 26 Cal.4th 876, 919 [the testimony of the interrogating officers was substantial evidence supporting trial court's finding *Miranda* advisements were given, despite the testimony of the defendant, his sister and his mother that they were not]; see generally *People v. Jones* (2013) 57 Cal.4th 899, 963 ["'unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction'"].)

17

Moreover, the situation here is quite different from that at issue in *Diaz*. Guerrero acknowledges she was given *Miranda* advisements at the outset of her second interview. As described in the following section, she immediately and unequivocally waived her rights. Unlike in *Diaz*, nothing about Guerrero's response to the advisements at the second interview casts doubt about her understanding of them the previous day.

While we share the trial court's concern for Detective Jurado's "unorthodox" method of ensuring a suspect understands his or her *Miranda* rights, as well as his decision not to readvise her when they arrived at the station—an issue Guerrero does not address on appeal—ultimately any error in denying Guerrero's motion to suppress her July 24, 2014 statement was harmless beyond a reasonable doubt. (*People v. Case* (2018) 5 Cal.5th 1, 22.) The evidence with regard to Guerrero's participation and mental state in the felony murder of Ji, which Guerrero did not address at all in her July 24, 2014 statement, was overwhelming. The surveillance footage demonstrated Guerrero's significant involvement in both the initial attack on Ji and in the second attack after he temporarily escaped. Forensic evidence confirmed the blood found on Guerrero's clothing was Ji's. To the extent Guerrero claims her statement admitting her involvement in the beach robberies following the murder affected the jury's reckless indifference finding, Rocha identified Guerrero as one of her assailants at the beach (along with Ochoa and Garcia) and testified Guerrero had been armed with a knife while her confederate was armed with a baseball bat, the same bat that still had Ji's blood on it when found at the beach the next day.

18

d. *The court did not err in denying Guerrero's motion to suppress statements made in her second interview*

Guerrero does not dispute that *Miranda* advisements were given at the beginning of her recorded interview on July 25, 2014 or that she told her interrogators she understood those rights. Despite this evidence, Guerrero contends the court did not consider the totality of the circumstances, especially Guerrero's age, in determining her waiver was knowing and intelligent. She observes she had no experience with the police—she had never been arrested before—and thus little understanding of what her rights actually meant. (Cf. *People v. Nelson*, *supra*, 53 Cal.4th at p. 375 [15 year old who had heard his rights during prior arrests and specifically told detectives he understood he had the right to remain silent voluntarily waived those rights by talking to officers].) Rather than considering this fact and the totality of the circumstances, Guerrero asserts the court looked only at the language of the advisement and Guerrero's affirmative response. That limited inquiry, she argues, was insufficient to find an informed waiver had occurred.

Guerrero's challenge to the admission of her second statement is without merit. While the court did not use the words "totality of the circumstances" when making its ruling, the record demonstrates the court considered all the evidence, including the words of the advisement and Guerrero's behavior during the interrogation, and found the People had carried their burden to demonstrate by a preponderance of the evidence that Guerrero's waiver was knowing and intelligent. Substantial evidence supports that finding.

19

3. *The Sentencing Court Is Statutorily Required To Consider Youth-related Mitigating Factors Before Imposing Life Without Parole Under Section 190.5, Subdivision (b)*

a. *Life without parole sentences imposed on juveniles*

In *Miller, supra*, 567 U.S. 460 the United States Supreme Court held that mandatory sentencing schemes imposing prison terms of life without parole on juvenile offenders violate the Eighth Amendment because they fail to consider youth-related mitigating factors that may diminish a juvenile's culpability and suggest a capacity for reform. Applying the principles of *Miller* in *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1388-1389 (*Gutierrez*), the California Supreme Court held Penal Code section 190.5, subdivision (b), which prescribes a sentence of life without parole or a term of 25 years to life for a 16- or 17-year-old defendant found guilty of special circumstances murder, "authorizes, and indeed requires" consideration of the youth-related mitigating factors identified in *Miller* before imposing life without parole on a juvenile homicide offender: "Under section 190.5(b), a sentencing court must consider the aggravating and mitigating factors enumerated in Penal Code section 190.3 and the California Rules of Court. [Citation.] Section 190.5(b) does not expressly direct the sentencing court to consider those factors, but 'since all discretionary authority is contextual, those factors that direct similar sentencing decisions are relevant, including "the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial."'" (*Gutierrez*, at p. 1387.)

As explained in our recent decision in *People v. Ochoa* (Aug. 18, 2020, B297183) __ Cal.App.5th __ , ___ [*9-10] [2020 Cal.App. Lexis 780], legislation initially enacted shortly before the decision in *Gutierrez* provides for youth offender parole hearings at statutorily prescribed points.  With the more recent passage of Senate Bill No. 394 (2017-2018 Reg. Sess.), youth offenders sentenced to life without parole are now entitled to a youth offender parole hearing in their 25th year of incarceration (see § 3051, subd. (b)(4)), effectively mooting Eighth Amendment challenges to sentences of life without parole or the functional equivalent of life without parole.  (See *People v. Franklin*, *supra*, 63 Cal.4th 261.)  However, that legislation did not alter the section 190.3 requirement, as interpreted in *Gutierrez*, requiring a sentencing court to consider the youth-related mitigating factors identified in *Miller* before imposing life without parole, rather than a 25-year-to-life sentence on a youth offender under section 190.5, subdivision (b).  Accordingly, we held in *Ochoa* consideration of youth-related mitigating factors at sentencing pursuant to section 190.5, subdivision (b), remains a statutory requirement.  (*Ochoa*, at p. [*14] ["[w]hile unquestionably mindful of, and motivated by, the *Miller* Court's constitutional-based concern for the fundamental differences between juvenile and adult minds, the [*Gutierrez*] Court's holding was predicated on the language of section 190.3 and a history of court decisions articulating the factors properly considered by a sentencing court as a matter of state law"; because the Legislature has maintained section 190.5, subdivision (b)'s alternative sentencing scheme for 16- and 17-year-old offenders, "the statutory requirement that youth-related mitigating factors must be considered at

21

sentencing, as the *Gutierrez* Court instructed, remains intact"].) (*Id.* at p. [\*16].)

   b. *Relevant proceedings*

  At sentencing Guerrero's counsel urged the court to consider, "regarding concurrent and consecutive sentencing," Guerrero's age, lack of criminal history, her "horrific" upbringing that included domestic violence and sexual abuse, and the peer pressures to "run with the wrong crowd," among other things. Defense counsel also informed the court he and the prosecutor anticipated stipulating to the submission of documentary evidence in lieu of a *Franklin* hearing[6] by the next scheduled hearing. (See, e.g., *People v. Sepulveda* (2020) 47 Cal.App.5th 291, 300-301 [trial court's acceptance, pursuant to parties' agreement, of relevant information of youth-related mitigating factors in lieu of a *Franklin* hearing did not violate due process].)

  Following defense counsel's argument, the court stated, "I think you've stated some factors—and these youth-related mitigating factors will be part of the *Franklin* packet for the parole board to consider when—in the future, when she gets to that point. And these are very good points you raise. And one of the factors in *Franklin* is the house and upbringing environment. And I think you're right, it's a tragedy. You know, the court

---

[6] Recognizing that assembling information on youth-related mitigating factors is a task more easily accomplished at the time of sentencing rather than decades later at a parole hearing, the *Franklin* Court held a defendant must be permitted at the time of sentencing to make a record of those factors (*People v. Franklin*, *supra*, 63 Cal.4th at pp. 283-284), a proceeding that has since become known as a *Franklin* hearing. (See *In re Cook* (2019) 7 Cal.5th 439, 459.)

being privy to what it heard of the victim in this matter, it's absolutely horrendous. But you raise some good points, and they've been memorialized, for purposes of this court's consideration. The court will take them into consideration for sentencing of the other counts. I will consider them."

Turning to sentencing, the court imposed life without parole pursuant to section 190.5, subdivision (b), for the murder of Ji; it did not address the alternative sentence of 25 years to life also authorized under that statute. As to youth-related mitigating factors, the court stated, "Due to the defendant's age at the time of the commission of the charges herein, she is entitled to a hearing for the limited purpose of affording her the opportunity to make a record of youth-related mitigating factors for the parole board's future consideration under the dictates of *People v. Franklin*, [*supra*,] 63 Cal.4th 261. The court has also considered the consequences and applicability of Penal Code section 3051 and SB 394 regarding juveniles receiving an LWOP [life without parole] sentencing term. Eventually, counsel will stipulate, it is this court's understanding, to the submission of a documentary package addressing the youth-related mitigating factors addressed in the defendant's juvenile proceedings related to this case to be considered by a parole board at the defendant's future youth offender parole hearing. This package, it is this court's understanding, will be in lieu of the *Franklin* hearing."

      c. *Where the record is ambiguous, the trial court's understanding of its statutory obligation to consider youth-related mitigating factors at sentencing cannot be presumed*

Acknowledging the availability of a youth offender parole hearing in her 25th year of incarceration has mooted any Eighth Amendment challenge to her sentence, Guerrero

23

contends, and the People do not dispute, section 190.5, subdivision (b), as interpreted by *Gutierrez, supra*, 58 Cal.4th 1354, requires consideration of youth-related mitigating factors at the time of sentencing. As discussed, we agree. (See *People v. Ochoa, supra*, __ Cal.App.5th at pp. __ [*14-16].)

The People insist the court properly considered youth-related mitigating factors at sentencing in accordance *Gutierrez, supra*, 58 Cal.4th 1354, or, at the very least, we must presume it did on this "silent record." (See *People v. Giordano* (2007) 42 Cal.4th 644, 666 [reviewing court presumes judgment is correct and all presumptions are indulged to support it on matters about which the record is silent]; *People v. Lee* (2017) 16 Cal.App.5th 861, 867 ["if the record is silent" on the court's awareness of its discretionary authority in sentencing, we must presume the court understood the scope of its discretion and affirm]; *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527 ["in light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, [the reviewing court] cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of [its] discretion"]; see also Cal. Rules of Court, rule 4.409 ["[r]elevant factors enumerated in these rules must be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise"].)

The record, however, is not silent. After defense counsel identified some youth-related mitigating factors, the court told Guerrero's counsel he had "made some good points" and it would consider them in connection with the "other counts," that is, the non-murder counts. The court's comments plainly indicated it

would not (and had no obligation to) consider those factors in relation to the sentence under section 190.5, subdivision (b), because they would be considered as part of a future youth offender parole hearing. At the very least, the record is ambiguous on this point. (See, e.g., *Ochoa, supra*, __ Cal.App.5th __ [*17].)

> d. *We cannot conclude any error in this regard was harmless*

The People alternatively contend the court's imposition of consecutive sentences on all counts following defense counsel's argument as to Guerrero's age and upbringing "clearly indicates that the court would not have sentenced [Guerrero] to a 25-year-to-life term" even if it had considered youth-related mitigating factors pursuant to section 190.5, subdivision (b). Accordingly, they insist, any error in failing to consider youth-related mitigating factors when sentencing Guerrero under section 190.5, subdivision (b), was necessarily harmless.

Contrary to the People's contention, the record does not unequivocally suggest the court would have imposed the same sentence had the youth-related mitigating factors been considered. That is, even assuming the court had considered some youth-related mitigating factors for purposes of exercising its discretion whether to impose concurrent or consecutive sentences and decided that consecutive sentences were warranted, that determination is fundamentally different from the choice whether to impose a 25-year-to-life sentence or a life without parole sentence, even with the availability of a youth offender parole hearing. (See generally *Gutierrez, supra*, 58 Cal.4th at p. 1391 ["'[d]efendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the

25

sentencing court.  [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record'"].)  When, as here, the record is at least ambiguous as to whether the court understood its statutory obligation to consider youth-related mitigating factors at sentencing before making the discretionary sentencing decision required by section 190.5, subdivision (b), there can be no presumption the court understood its obligation.  Accordingly, remand is appropriate.  (*People v. Ochoa, supra,* __ Cal.App.5th at pp. __ [*18-19]; see *People v. Lua* (2017) 10 Cal.App.5th 1004, 1021 ["We cannot say that it is clear that the trial court recognized it had discretion to strike one or more of defendant's [Health & Safety Code,] section 11370.2 enhancements, and expressly declined to do so [citations][,] [n]or is the record silent on the issue, justifying a presumption in favor of the judgment. [Citation.]  We do not agree with the defendant's argument that the record conclusively establishes that the trial court misunderstood the scope of its discretion . . . , but we do find that some of the trial court's comments during sentencing raise serious doubts about that regard.  In the face of such an ambiguous record, it is appropriate to remand to the trial court to consider the matter under the correct standard, to the extent it has not already done so"]; *People v. Morrison* (2019) 34 Cal.App.5th 217, 224 [same].)

26

### 4. *On Remand the Trial Court Should Consider Guerrero's Ability To Pay Fines, Fees and Assessments*

At sentencing the court imposed the minimum restitution fine of $300 (Pen. Code, § 1202.4, subd. (b)), a $40 court operations assessment (Pen. Code, § 1465.8) and a $30 criminal conviction assessment (Gov. Code, § 70373). Relying on our decisions in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 and *People v. Belloso* (2019) 42 Cal.App.5th 647, 662-663, review granted March 11, 2020, S259755, Guerrero asserts due process requires that we remand to allow her the opportunity to present evidence concerning her ability to pay these fines and assessments.[7] In light of our remand for resentencing under section 190.5, subdivision (b), Guerrero will have the opportunity to present evidence concerning her ability to pay those fines and assessments.[8]

---

[7] The Supreme Court has granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, 95-96, review granted, November 13, 2019, S257844, to decide the following issues: "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? If so, which party bears the burden of proof regarding defendant's inability to pay?"

[8] The court imposed a $10 crime prevention fee at sentencing for each count of conviction. Guerrero contends, and the People agree, this was error. (§1202.5, subd. (a); see *People v. Crittle* (2007) 154 Cal.App.4th 368, 371 [crime prevention fine authorized in section 1202.5, subdivision (a), properly imposed only once per case, not per conviction].) In light of our remand for resentencing, the error is moot.

## DISPOSITION

Guerrero's convictions are affirmed.  The matter is remanded for resentencing.  At resentencing the court must consider youth-related mitigating factors in deciding whether to impose life without parole under section 190.5, subdivision (b), and permit Guerrero to present evidence, if she wishes, concerning her ability to pay the restitution fine and court operations and criminal conviction assessments.


PERLUSS, P. J.

We concur:


SEGAL, J


FEUER, J.

28